UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAURICE PATTERSON,                                    :

                  Petitioner,                  :      14 Civ. 7072 (JSR)(AJP), 10 Cr. 94 (JSR)

        -against-                          :      **REPORT AND RECOMMENDATION**

UNITED STATES,                                        :

                 Respondent.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Jed S. Rakoff, United States District Judge:**

        Pursuant to 28 U.S.C. § 2255, pro se petitioner Maurice Patterson seeks to vacate his 120-month sentence for conspiracy to distribute crack cocaine.  (10 Cr. 94, Dkt. No. 183: Pet.)[1] In three counts, Patterson's petition alleges that his trial counsel was ineffective, and a fourth count alleges that the district court violated his rights under the Eighth Amendment and the Fifth Amendment Due Process Clause.  (10 Cr. 94, Pet. at 5-9.)

        For the reasons set forth below, Patterson's petition should be DENIED.

## FACTS

### The Indictment

        On February 11, 2010, Patterson was indicted and charged with one count of conspiring to distribute and possess with the intent to distribute fifty grams and more of crack cocaine from 2002 to 2010  (10 Cr. 94, Dkt. No. 8: S2 Superseding Indict. ¶¶ 1-3), and one count

---

[1]      References to docket entries in Patterson's criminal case are indicated as "10 Cr. 94, Dkt. No. __."  References to "Dkt. No." are to the docket entries in 14 Civ. 7072.

of using, carrying, or possessing firearms which were discharged in furtherance of the conspiracy (S2 Superseding Indict. ¶ 5).

**The Plea Agreement**

On July 20, 2010, Patterson entered into a written plea agreement with the Government.  (Dkt. No. 23: Gov't Br. Ex. A: Plea Agmt.)  Patterson admitted that he conspired to distribute and possess with intent to distribute at least 500 grams but less than 1.5 kilograms of cocaine base, i.e., crack.  (Plea Agmt. at 2.)  The Government agreed to dismiss at the time of sentencing the firearms charges.  (Plea Agmt. at 1.)

The parties stipulated to the following: (1) because Patterson had conspired to distribute between 500 grams and 1.5 kilograms of cocaine, Patterson's base offense level was 34 under the U.S. Sentencing Guidelines ("U.S.S.G.") (Plea Agmt. at 2); (2) Patterson was subject to a two-level increase because he possessed and discharged a firearm during the conspiracy (Plea Agmt. at 2); (3) Patterson was entitled to a two-level reduction for acceptance of responsibility, and a one-level reduction because he gave timely notice of his intention to enter a guilty plea (Plea Agmt. at 2), for a guidance offense level of 33; and (4) Patterson had two criminal history points, placing him within Criminal History Category ("CHC") II (Plea Agmt. at 3-4).  Accordingly, the parties agreed that Patterson's total offense level was 33, his CHC was II, and that this combination yielded a Guidelines sentencing range of 151 to 188 months' imprisonment with a mandatory minimum sentence of 120 months' imprisonment.  (Plea Agmt. at 4.)

As part of the plea agreement, Patterson also agreed that he would

not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 151 to 188 months' imprisonment . . . .

(Plea Agmt. at 5.)

**The Guilty Plea Hearing**

At the August 3, 2010 plea hearing before Judge Rakoff, Patterson's counsel indicated that Patterson wished to plead guilty to Count One of the S2 superseding indictment.  (Dkt. No. 23: Gov't Br. Ex. D: Plea Tr. at 2.)  Judge Rakoff asked Patterson whether he was satisfied with the representation by his counsel, Donna Newman, and Patterson replied that he was.  (Plea Tr. at 4.) Patterson also responded that he had a full opportunity to discuss the matter with his counsel.  (Plea Tr. at 4.)  Judge Rakoff advised Patterson of certain rights that he was giving up and certain consequences of pleading guilty.  (Plea Tr. at 5-7.)[2]  Patterson confirmed to Judge Rakoff that he had read and understood the plea letter, and "signed it in order to indicate [his] agreement to its terms." (Plea. Tr. at 8.)  Judge Rakoff also discussed the appeal waiver with Patterson:

> THE COURT:   . . . [I]f I do sentence you to 188 months or less, then under your agreement with the government you have agreed not to appeal or collaterally attack your sentence.  Do you understand that?
>
> [PATTERSON]:   Yes, sir.

(Plea. Tr. at 9.)

Patterson allocuted that he agreed with others to sell crack cocaine, and that he sold more than 50 grams of crack cocaine.  (Plea Tr. at 11.)  Judge Rakoff accepted Patterson's guilty

---

[2]   Judge Rakoff also advised Patterson that the mandatory minimum sentence was ten years imprisonment and five years supervised release.  (Plea Tr. at 7.)  Judge Rakoff confirmed that Patterson understood that his sentence would be determined solely by the District Court, that Judge Rakoff was not bound by the Government's estimates regarding Patterson's sentencing exposure, and that Patterson was bound by whatever sentence Judge Rakoff imposed.  (Plea Tr. at 7-9.)

plea, finding that Patterson entered his guilty plea knowingly and voluntarily with sufficient supportive facts.  (Plea Tr. at 12.)

**Sentencing-Related Proceedings**

On November 2, 2010, Patterson's counsel, Donna Newman, filed a forty page brief asking the Court to retroactively apply the Fair Sentencing Act ("FSA") to Patterson's sentence.  (10 Cr. 94, Dkt. No. 91: Patterson FSA Br.)  Were the Court to retroactively apply the FSA, the 50 grams to which Patterson allocuted would fall below the now 280 gram threshold for a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(iii).  (See Patterson FSA Br. at 1 n.1). The 50 grams would trigger only the five-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(iii).  Compare 21 U.S.C. § 841(b)(1)(A)(iii) (2009) (50 grams crack cocaine triggers ten-year mandatory minimum), with 21 U.S.C. § 841(b)(1)(A)-(B) (effective Aug. 3, 2010) (50 grams crack cocaine triggers five-year mandatory minimum.)  (See also Patterson FSA Br. at 1 n.1.)

On the same date, Patterson's counsel submitted a separate sentencing memorandum arguing that Patterson's CHC should be reduced to I, because his prior convictions were relevant to the underlying offense.  (10 Cr. 94, Dkt. No. 92: Patterson Sentencing Br. at 7-8.)  Patterson's counsel further argued that Patterson's base offense level should be reduced to 25 to correct for the sentencing disparity between crack and powder cocaine offenses. (Patterson Sentencing Br. at 12-15.)  Patterson's counsel finally argued for a non-Guidelines sentence of 71 months.  (10 Cr. 94, Patterson Sentencing Br. at 1, 15.)  Patterson's counsel submitted an addendum to the sentencing brief on November 3, 2010.  (10 Cr. 94, Dkt. No. 93.)

On December 30, 2010, Judge Rakoff issued an opinion rejecting the defendants' argument about the FSA.  United States v. Patterson, 10 Cr. 94, 2010 WL 5480838 (S.D.N.Y. Dec. 30, 2010).  Relying on the Savings Statute, 1 U.S.C. § 109, Judge Rakoff held that:

[A] criminal defendant is subject to the statutory "penalty, forfeiture, or liability" in place at the time he commits the offense -- and therefore does not benefit from a subsequently-enacted reduction -- "unless the repealing Act . . . expressly provide[s]" otherwise. . . .

Here, it is manifest that no language of the FSA expressly mandates that its provisions apply retroactively. . . .

. . . .

Nor, frankly, do the defendants here have any cause to complain.  The defendants in this action engaged in criminal acts while those acts were subject to a mandatory minimum sentence of ten years, and, as noted, they pled guilty to those crimes on the express understanding that the Court was bound by statutory mandate to impose, at minimum, a ten year sentence for the crimes to which they had now confessed. . . .

Accordingly, for the foregoing reasons, the Court concludes that the FSA's reduced statutory minimums do not apply in the instant cases and that the defendants here remain subject to the ten-year mandatory minimum.

United States v. Patterson, 10 Cr. 94, 2010 WL 5480838 at *1-4 (S.D.N.Y. Dec. 30, 2010).

**The January 19, 2011 Sentencing Hearing**

On January 19, 2011, Judge Rakoff sentenced Patterson.  (Dkt. No. 23: Gov't Br. Ex. G: 1/19/11 Sentencing Hearing ("S.").)

At the outset, Judge Rakoff questioned Patterson about a January 13, 2011 letter he submitted to the Court requesting new counsel and seeking "'relief'" from his guilty plea so that he could appeal the Court's decision that the FSA did not apply retroactively. (S. 2.)  Judge Rakoff explained that Patterson could not file an appeal until final judgment was entered in his case.  (S. 3-5.)  Patterson then confirmed that despite the requests in his letter, he wanted to proceed with sentencing and withdraw his request for new counsel.  (S. 5.)  Patterson's counsel presented her argument that Patterson's CHC should be reduced to I, and Judge Rakoff stated that he would "make an independent calculation" as to the Guidelines range and is "never bound" by the parties'

stipulation.  (S. 6-8.)  Judge Rakoff further stated that Patterson's sentence would not "be affected, one whit, by whether [the criminal history category is] I or II or III for that matter."  (S. 11.)  Judge Rakoff found that Patterson's total offense level was 33, CHC was II, and Guidelines range was 151 to 188 months, with a mandatory minimum of 120 months, but stated that "what really is relevant to the Court . . . is what the sentence should be under all the factors under Section 3553(a)."  (S. 11-12.)

Patterson's counsel argued that without specifically applying the FSA retroactively, the Court should consider Congressional policy and criminal law policy concerning the sentencing disparity for crack and powder cocaine offenses.  (S. 12.)  Patterson's counsel further argued that Patterson should be given "'credit'" for twenty-eight months spent in state prison.  (S. 16-17.)  Patterson apologized for his conduct and stated that he "want[s] to thank [his] lawyer."  (S. 22-23.)  Judge Rakoff responded that he was "impressed by the statement [he] just heard from Mr. Patterson," which showed Patterson's "ultimate humanity."  (S. 24.)  Judge Rakoff imposed a non-Guidelines sentence of 120 months, stating that even if the new Guidelines were in place he "would not sentence Mr. Patterson to less than 120 months, because the nature of the underlying offense and the whole background requires at least a ten-year sentence to fulfill the functions of Section 3553(a)."  (S. 24-25.)  Judge Rakoff granted the Government's motion to dismiss the remaining charges (i.e., the firearm count) against Patterson.  (S. 26.)

Finally, Judge Rakoff discussed Patterson's appeal rights:

THE COURT:               . . . Mr. Patterson, I really want you to understand, because of some of the bad advice you've gotten from your co-defendants – when you entered into this plea agreement, you agreed that if I gave you a sentence such as the one I gave you just now, you would not appeal your sentence.  Do you understand that?

|                    |                                                                                                                                                                                                                                                                                                                                                                                                                                       |
| ------------------ | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| [Patterson]:       | Yes, your Honor.                                                                                                                                                                                                                                                                                                                                                                                                                       |
| THE COURT:         | Now, having said that, there is one issue that I think is appealable, even under the terms of the government's agreement.  The government may disagree, and this will be a debate between the two sides.  But it's the only issue I think you can even with a straight face appeal, which is the question of the retroactivity of the new guidelines.  Frankly, I think I made this as clear as I possibly can; it would not have affected the sentence in any way, shape, or form. Nevertheless, that's the only issue that you can appeal. |

(S. 27-28.)  Judgment was entered on January 31, 2011.  (10 Cr. 94, Dkt. No. 118: Judgment.)

## Patterson's Direct Appeal

Still represented by counsel Donna Newman, Patterson timely filed a notice of appeal on January 31, 2011.  (10 Cr. 94, Dkt. No. 119.)  Patterson's August 1, 2011 appeal brief, filed by new counsel, Georgia J. Hinde, argued that the Second Circuit should vacate Patterson's sentence and "remand for his resentencing using the lesser five-year mandatory minimum sentence that applies to his offense of conviction under present law."  (Dkt. No. 23: Gov't Br. Ex. H: Patterson Appeal Br. at 3.)  The Government moved to dismiss Patterson's appeal on the basis of the appeal waiver in Patterson's plea agreement.  (Gov't Br. at 12.)  On May 21, 2013, the Second Circuit granted the Government's motion, finding Patterson's appeal barred by his appeal waiver.  (10 Cr. 94, Dkt. No. 154: 2d Cir. Order of Dismissal.)  In so finding, the Second Circuit cited United States v. Harrison: "[T]he change in law caused by . . . [the Supreme Court's] interpretation of the Fair Sentencing Act [in Dorsey v. United States, 132 S. Ct. 2321 (2012)] is not sufficient to upset a valid waiver of appeal."  United States v. Harrison, 699 F.3d 158, 159 (2d Cir. 2012) (per curiam), cert. denied, 133 S. Ct. 914 (2013).

**Patterson's 28 U.S.C. § 2255 Motion**

On August 18, 2014, Patterson filed a pro se motion to appoint counsel for a petition pursuant to 28 U.S.C. 2255.  (Dkt. No. 1: Patterson Motion for Counsel.)  Patterson's motion asserted that he was advised of the wrong mandatory maximum and minimum sentencing guidelines, and that if he had known at the time of the plea that he "no longer faced a life sentence at trial, [he] could have made a decision to go to trial and been found innocent possibly or struck a better plea deal." (Patterson Motion for Counsel at 1.)  On that basis, Patterson asserted that his plea was not made "knowingly, voluntarily, or intelligently."  (Id.)

On September 3, 2014, the Court denied Patterson's motion for appointment of counsel.  (Dkt. No. 3.)  The Court further stated that the Fair Sentencing Act issue already had been analyzed in connection with the § 2255 petition of Patterson's co-defendant, Tyrone Oldyn, and if Patterson wished to proceed in making a § 2255 petition, "he should explain why the result should be different in his case [than] from Oldyn's." (Dkt. No. 3.)

On November 3, 2014, Patterson submitted a brief highlighting the differences between the facts of his case and co-defendant Oldyn's.  (Dkt. No. 9: Patterson Br.)  On January 13, 2015, Patterson filed a § 2255 motion, to which he attached a copy of his November 3, 2014 brief. (10 Cr. 94, Dkt. No. 183: Pet.)[3/]  Patterson's § 2255 motion asserts that defense counsel Donna Newman was ineffective because she "erred in stipulat[ing] to a criminal history Category of II" and made a mistake as to Patterson's "Category Range." (10 Crim. 94, Pet. at 5.)  Patterson elaborates that Newman "clearly stated she made a mistake with the [p]lea" concerning whether Patterson was on probation at the time of the underlying offense. (10 Cr. 94, Pet. Ex. at 2; see also 10 Cr. 94, Pet.

---

[3/]     Patterson's November 3, 2014 brief will hereinafter be referenced as an exhibit to his § 2255 Petition.

Ex. at 15-20.)  Further, Patterson asserts that Newman advised him of the "wrong minimum and maximum" sentencing guidelines, and that he would have gone to trial had he known he "no longer faced a life sentence." (10 Cr. 94, Pet. at 9.)  Finally, Patterson's petition asserts that Judge Rakoff "erred by not applying the FSA proper Guideline Range and Category."  (10 Cr. 94, Pet. at 6.) While Patterson's brief (10 Cr. 94, Pet. Ex.) does not specifically argue that his appellate counsel was ineffective, he asserts that appellate counsel did not argue his "proper guideline range" and failed to supplement the appeal brief with United States v. Dorsey, 132 S. Ct. 2321 (2012).  (10 Cr. 94, Pet. Ex. at 13).

## ANALYSIS

### I.   LEGAL STANDARDS

#### A.   28 U.S.C. § 2255 Motions

To prevail on a motion pursuant to 28 U.S.C. § 2255, a prisoner must demonstrate that either "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "Because the Sixth Amendment provides criminal defendants with the right to effective assistance of counsel, inadequate representation is a basis for relief under section 2255."  Morales v. United States, 635 F.3d 39, 43 (2d Cir.), cert. denied, 132 S. Ct. 562 (2011) (citations omitted); accord, e.g., Oldyn v. United States, 14 Civ. 307, 10 Cr. 94, 2014 WL 3417465 at *4 (S.D.N.Y. July 8, 2014) (Peck, M.J.).

#### B.   The Fair Sentencing Act of 2010

On August 3, 2010, President Obama signed into law the Fair Sentencing Act of 2010 ("FSA").  See Oldyn v. United States, 14 Civ. 307, 10 Cr. 94, 2014 WL 3417465 at *5 (S.D.N.Y.

July 8, 2014) (Peck, M.J.).  (See also Dkt. No. 23: Gov't Br. at 6.)  The FSA, inter alia, "reduced the disparity between the amount of crack cocaine and powder cocaine needed to trigger certain federal criminal penalties from a 100:1 weight ratio to an 18:1 weight ratio."  United States v. Bailey, 10 Cr. 391, 11 Civ. 7101, 12 Civ. 3648, 2013 WL 1828669 at *1 (S.D.N.Y. Apr. 29, 2013). Specifically, the FSA raised the amount of crack cocaine required to support a ten-year mandatory minimum sentence from 50 grams to 280 grams.  21 U.S.C. § 841(b)(1)(A)(iii).  On November 1, 2010, the United States Sentencing Commission issued emergency amendments to the U.S.S.G., increasing the required quantity of crack cocaine for a base offense level of 32 to between 280 and 840 grams, and for a base offense level of 34 to between 840 grams and 2.8 kilograms.  See U.S.S.G. § 2D1.1(c).

In United States v. Acoff, 634 F.3d 200 (2d Cir.) (per curiam), cert. denied, 131 S. Ct. 3007 (2011), the Second Circuit held that the savings statute forecloses the retroactive application of the FSA's more lenient penalty provisions.  See United States v. Acoff, 634 F.3d at 202; see also id. at 204-05 (Lynch, C.J., concurring) ("[T]hrough the combination of the savings statute, and the provisions of the Fair Sentencing Act of 2010, which fails to provide for any retroactive application of its reform of the sentences for crack cocaine offenses, Congress has commanded that offenders who committed such offenses before the effective date of the FSA but are to be sentenced after that date must be sentenced under the harsh terms of the prior law . . . ." (emphasis added & citations omitted)).  Indeed, the Second Circuit found it consistent with the Constitution that "in the absence of a clear statement of retroactivity," it "is the normal—and normally appropriate—procedure" to apply the law in effect at the time the conduct occurred.  See id. at 203 (Calabresi, C.J., concurring).  This is so because "[i]t is not irrational for Congress to impose a penalty on those who committed their offenses at a time when they knew or should have

known the severity of the applicable penalty, even while reducing the penalty as to future offenders."
Id. at 202 (per curiam).[4/]

The Supreme Court in Dorsey v. United States, 132 S. Ct. 2321 (2012), addressed the retroactive application of the FSA to defendants who, prior to the FSA's passage, committed crack-related crimes subject to the pre-FSA mandatory minimums, but who were not sentenced until after the FSA became law.  In Dorsey, the Supreme Court concluded that the FSA's changes to the threshold quantities of crack cocaine necessary to trigger the mandatory minimum sentences applied to such defendants because, inter alia, "[t]he Sentencing Commission has . . . instructed sentencing judges to 'use the Guidelines Manual in effect on the date that the defendant is sentenced,' regardless of when the defendant committed the offense, unless doing so 'would violate the ex post facto clause.'"  Id. at 2332 (quoting U.S.S.G. § 1B1.11).  Thus, after Dorsey, "the Fair Sentencing Act's new, lower mandatory minimums . . . apply to the post-Act sentencing of pre-Act offenders."  Dorsey v. United States 132 S. Ct. at 2335.

---

[4/]   The Sixth and Eleventh Circuits agreed with the Second Circuit.  See United States v. Gomes, 621 F.3d 1343, 1346 (11th Cir. 2010) (per curiam) ("[B]ecause the FSA took effect in August 2010, after appellant committed his crimes, 1 U.S.C. § 109 bars the Act from affecting his punishment."), cert. denied, 131 S. Ct. 1833 (2011), abrogated on other grounds by Dorsey v. United States, 132 S. Ct. 2321 (2012); United States v. Carradine, 621 F.3d 575, 580 (6th Cir. 2010) ("The new law at issue here, the [FSA], contains no express statement that it is retroactive nor can we infer any such express intent from its plain language.  Consequently, we must apply the penalty provision in place at the time [defendant] committed the crime in question."), cert. denied, 131 S. Ct. 1706 (2011), abrogated on other grounds by Dorsey v. United States, 132 S. Ct. 2321 (2012).  Two other Circuits reached a conflicting result.  See United States v. Dixon, 648 F.3d 195, 203 (3d Cir. 2011) ("We hold that the FSA requires application of the new mandatory minimum sentencing provisions to all defendants sentenced on or after August 3, 2010, regardless of when the offense conduct occurred."); United States v. Douglas, 644 F.3d 39, 42-44 (1st Cir. 2011).

The Second Circuit in United States v. Harrison, 699 F.3d 158 (2d Cir. 2012) (per curiam), cert. denied, 133 S. Ct. 914 (2013), clarified that "the change in law caused by Dorsey's interpretation of the Fair Sentencing Act is not sufficient to upset a valid waiver of appeal." 699 F.3d at 159.[5/] Where an appeal waiver was entered into knowingly and voluntarily, "'[a] defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce [that] appeal waiver."'" United States v. Harrison, 699 F.3d at 159 (quoting United States v. Riggi, 649 F.3d 143, 150 n.7 (2d Cir. 2011)).

## C.   Appeal Waivers

The Second Circuit has held that "[w]here the record clearly demonstrates that the defendant's waiver of [his] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable." United States v. Monzon, 359 F. 3d 110, 116 (2d Cir. 2004).[6/] In addition, the Second Circuit has held that "[t]here is no general bar to a waiver of collateral attack rights in a plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002) (citing Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir.

---

[5/]   See also United States v. Stephens, 501 F. App'x 117, 119 (3d Cir. 2012); United States v. Thomas, No. 12-30068, 481 F. App'x 238 (table), 2012 WL 4378736 at *1 (5th Cir. Sept. 26, 2012) (per curiam).

[6/]   Accord, e.g., United States v. Pearson, 570 F.3d 480, 485 (2d Cir. 2009) (per curiam) ("'[I]n no circumstance . . . may a defendant, who has . . . knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.'" (quoting United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.) (per curiam), cert. denied, 509 U.S. 931, 113 S. Ct. 3060 (1993))); United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998) ("It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable."); Rios v. United States, 13 Civ. 7831, 11 Cr. 568, 2014 WL 2751027 at *2 (S.D.N.Y. June 17, 2014); Moore v. United States, 00 Civ. 4560, 98 Cr. 833, 2001 WL 253432 at *9 (S.D.N.Y. Mar. 15, 2001) (Peck, M.J.) (citing cases).

2001) (§ 2255 waiver, like direct appeal waiver, applies to claims arising before the waiver and also after the waiver at sentencing)), cert. denied, 537 U.S. 1146, 123 S. Ct. 946 (2003).[7]

Determining that plea agreement waivers of appeal/2255 rights are generally enforceable, however, does not end the inquiry.  The Second Circuit has held that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement."  Frederick v. Warden, 308 F.3d at 195.  An appeal or collateral attack waiver is unenforceable only if the defendant has a "meritorious" claim that "the waiver was the result of ineffective assistance of counsel."  United States v. Monzon, 359 F. 3d at 118-19.[8]

---

[7]   Accord, e.g., Page v. Burge, 331 F. App'x 883, 884 (2d Cir. 2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1298 (2010); Tremblay v. United States, 08 Civ. 7030, 05 Cr. 0783, 2009 WL 1055007 *8 (S.D.N.Y. Apr. 20, 2009); Okupe v. United States, No. 08 CV 693, 2009 WL 455289 at *2 (E.D.N.Y. Feb. 23, 2009) ("Petitioner's challenge to his sentence is foreclosed by his knowing and voluntary waiver of his right to appeal or otherwise challenge a sentence at or below [the stipulated range] as part of his plea agreement."); Antonucci v. United States, 08 Civ. 529, 04 Cr. 828, 2009 WL 185996 at *3 (S.D.N.Y. Jan. 26, 2009); Castellanos v. United States, 06 Civ. 7773, 02 Cr. 1314, 2008 WL 4548916 at *3 (S.D.N.Y. Oct. 8, 2008); Wall v. United States, No. 06-CR-400, 2008 WL 3049948 at *1 (N.D.N.Y. Aug. 1, 2008); Isaza v. United States, 04 Civ. 6096, 00 Cr. 979, 2008 WL 1849170 at *3 (S.D.N.Y. Apr. 24, 2008); Garcia v. United States, 01 Cr. 945, 04 Civ. 6020, 2008 WL 683661 at *3 (S.D.N.Y. Mar. 14, 2008), report & rec. adopted, 2008 WL 2446840 (S.D.N.Y. June 17, 2008).

[8]   Accord, e.g., Tellado v. United States, 745 F.3d 48, 53 (2d Cir.), cert. denied, 135 S. Ct. 125 (2014); Deloir v. United States, 07 Civ. 10633, 06 Cr. 576, 2009 WL 1883263 at *2 (S.D.N.Y. June 30, 2009); Marulanda v. United States, No. 07 CV 5301, 2009 WL 1546315 at *2 (E.D.N.Y. June 2, 2009); Giraldo-Perez v. United States, 08 Civ. 7529, 2009 WL 1492222 at *2 (S.D.N.Y. May 18, 2009); Reyes v. United States, 05 Civ. 3924, 2009 WL 928284 at *2 (S.D.N.Y. Mar. 27, 2009) ("A defendant's waiver of his right to bring a petition pursuant to Section 2255 is unenforceable where defendant was denied effective assistance of counsel in connection with the negotiation and execution of the agreement containing the waiver."); Concepcion-Baez v. United States, No. 02 CV 5287, 2009 WL 765045 at *1 (E.D.N.Y. Mar. 23, 2009); Antonucci v. United States, 2009 WL 185996 at *3; Fuller v. United States, No. 08-CV-3950, 2008 WL 4614998 at *1 (E.D.N.Y. Oct. 15, 2008); Kang (continued...)

"[W]ith respect to claims of ineffective assistance of counsel that are limited to post-plea events (e.g. sentencing), however, the waiver remains enforceable."  Marulanda v. United States, 2009 WL 1546315 at *2; accord, e.g., Page v. Burge, 331 F. App'x at 884; Garcia-Santos v. United States, 273 F.3d at 508-09; Concepcion-Baez v. United States, 2009 WL 765045 at *1 ("[A] valid waiver will be upheld against a challenge to the correctness of a sentence."); Okupe v. United States, 2009 WL 455289 at *2; Castellanos v. United States, 2008 WL 4548916 at *3, 5; Wall v. United States, 2008 WL 3049948 at *1 ("'[C]laims of ineffective representation concerning sentencing generally do not survive the § 2255 waiver because . . . [they] relate[] only to the performance of defendant's attorney with respect to sentencing and [do] not go to the validity of the plea agreement itself.'") (citation omitted & alterations in original); Chen v. United States, 06 Civ. 7159, 02 Cr. 1039, 2007 WL 4358466 at *4 (S.D.N.Y. Dec. 7, 2007).

**D.**     **The Strickland v. Washington Standard on Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687, 104 S. Ct. at 2064.[9/]  This performance is to be judged by an

---

[8/]     (...continued)
v. United States, No. 08 cv 1952, 2008 WL 4283342 at *4 (E.D.N.Y. Sept. 17, 2008); Caminero v. United States, 99 Civ. 9093, 97 Cr. 123, 2008 WL 3833787 at *3 (S.D.N.Y. Aug. 15, 2008); Wall v. United States, 2008 WL 3049948 at *1; Polito v. United States, No. 06 CV 4782, 2007 WL 2815694 at *3 (E.D.N.Y. Sept. 25, 2007).

[9/]     Accord, e.g., Harrington v. Richter, 562 U.S. 86, 104, 131 S. Ct. 770, 787 (2011); Premo v. Moore, 562 U.S. 115, 122, 131 S. Ct. 733, 739 (2011); Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); Bell v. Miller, 500 F.3d 149, 156-57 (2d Cir. 2007); Henry v.
(continued...)

objective standard of reasonableness.  Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at

2064.[10/]  The "'purpose of the effective assistance guarantee of the Sixth Amendment is . . . simply

to ensure that criminal defendants receive a fair trial.'  Thus, '[t]he benchmark for judging any claim

of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result.'"  Cullen v.

Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland v. Washington, 466 U.S. at 686, 689,

104 S. Ct. at 2063, 2065) (citation omitted).

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[11/]  Ineffective

assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning

quarterbacking' . . . .  Decisions by criminal defense counsel are often choices among bad

---

[9/]       (...continued)
           Poole, 409 F.3d 48, 62-63 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622
           (2006).

[10/]      Accord, e.g., Harrington v. Richter, 562 U.S. at 104, 131 S. Ct. at 787; Wiggins v. Smith,
           539 U.S. at 521, 123 S. Ct. at 2535; Bell v. Cone, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850
           (2002); Henry v. Poole, 409 F.3d at 63.

[11/]      Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 562 U.S. at 104-
           06, 131 S. Ct. at 787-88; Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Bierenbaum v.
           Graham, 607 F.3d 36, 50-51 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Bell v.
           Miller, 500 F.3d at 156-57; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78,
           95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

alternatives . . . ." <u>Mui</u> v. <u>United States</u>, 614 F.3d 50, 57 (2d Cir. 2010); <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 562 U.S. at 105, 131 S. Ct. at 788 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'"). Petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." <u>Harrington</u> v. <u>Richter</u>, 562 U.S. at 104, 131 S. Ct. at 787 (quotations omitted).

   Second, the defendant must show prejudice from counsel's performance. <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 687, 104 S. Ct. at 2064; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403.  The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694, 104 S. Ct. at 2068.[12]

---

[12]   See also, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 562 U.S. at 104, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 695, 122 S. Ct. at 1850; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63-64; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95; <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 315; <u>DeLuca</u> v. <u>Lord</u>, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 694, 104 S. Ct. at 2068; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 562 U.S. at 104, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 51.  The phrase "reasonable probability," despite its language, should not be confused with "'more likely than not.'" <u>Strickler</u> v. <u>Greene</u>, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 562 U.S. at 112, 131 S. Ct. at 792; <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); <u>Nix</u> v. <u>Whiteside</u>, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish
(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules."  Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at  2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'"  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Harrington v. Richter, 562 U.S. at 105, 131 S. Ct. at 788; see also, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("The [Supreme] Court acknowledged that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'").

---

12/      (...continued)
prevailing professional norms,' not whether it deviated from best practices or most common custom."  Harrington v. Richter, 562 U.S. at 105, 131 S. Ct. at 788; see also, e.g., Cullen v.

prejudice under Strickland."); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility."  Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.[13]

In addition, the Supreme Court has counseled that:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[14]

"The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d

---

[13]   Accord, e.g., Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000); Santone v. Fischer, 689 F.3d 138, 154 (2d Cir.) (ineffective assistance "'claim[s] must be rejected if the defendant fails to meet either the performance prong or the prejudice prong'"), cert. denied, 133 S. Ct. 390 (2012).

[14]   See also, e.g., Harrington v. Richter, 562 U.S. at 107, 131 S. Ct. at 789-90 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Moreover, an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal." (citations omitted)); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

at 199; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance."); Bierenbaum v. Graham, 607 F.3d at 50-51; Bell v. Miller, 500 F.3d at 156-57. "'Surmounting Strickland's high bar is never an easy task.'" Harrington v. Richter, 562 U.S. at 105, 131 S. Ct. at 788 ("[T]he Strickland standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one.").

The Strickland standard also applies to ineffective assistance claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985).[15/] "In the context of a guilty plea, the prejudice requirement 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Moore v. United States, 00 Civ. 4560, 98 Cr. 833, 2001 WL 253432 at *11 (S.D.N.Y. Mar. 15, 2001) (Peck, M.J.) (quoting Hill v. Lockhart, 474 U.S. at 59, 106 S. Ct. at 370).[16/]

---

[15/]   See, e.g., Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 746 (2008); United States v. Doe, 537 F.3d 204, 213-14 (2d Cir. 2008); United States v. Jennings, 282 F. App'x 37, 38 (2d Cir. 2008); United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005); United States v. Thomas, 74 F. App'x 113, 115 (2d Cir. 2003), cert. denied, 541 U.S. 1019, 124 S. Ct. 2089 (2004).

[16/]   Accord, e.g., United States v. Gunn, 419 F. App'x 106, 109 (2d Cir.), cert. denied, 132 S. Ct. 302 (2011); United States v. Doe, 537 F.3d at 214; United States v. Arteca, 411 F.3d at 320; United States v. Garcia, 57 F. App'x 486, 489 (2d Cir.), cert. denied, 538 U.S. 992, 123 S. Ct. 1815 (2003); United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002); United States v. Coffin, 76 F.3d 494, 498 (2d Cir.), cert. denied, 517 U.S. 1147, 116 S. Ct. 1445 (1996); Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992); Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir.1992); Panuccio v. Kelly, 927 F.2d 106, 108 (2d Cir. 1991); Morton v. Perez, 13 Civ. 3985, 2014 WL 407411 at *9 (S.D.N.Y. Feb. 4, 2014), report & rec. adopted, 2014 WL 948186 (S.D.N.Y. Mar. 11, 2014); Hardy v. United States, 11 Civ. 8382, 10 Cr. 1123, 2012 WL 843384 at *9 (S.D.N.Y. Mar. 14, 2012) (Peck, M.J.); Eber-Schmid v. Cuomo, 09 Civ. 8036, 09 Civ. 8038, 2010 WL 1640905 at *18 (S.D.N.Y. Apr. 22, 2010) (Peck, M.J.), report
(continued...)

Moreover, in a case such as this where a petitioner has waived his right to collateral attack of his sentence, "[t]o raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary, because 'the advice he received from counsel was not within acceptable standards.'" Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (citations omitted), cert. denied, 555 U.S. 1197, 129 S. Ct. 1376 (2009).  A petitioner cannot avoid the waiver by "challenging [his] attorney's role in shaping [his] bargaining position," but rather must challenge his attorney's "advice about that bargaining position." Parisi v. United States, 529 F.3d at 138-39.

## II.    THE COURT NEED NOT HOLD AN EVIDENTIARY HEARING

A district court should not dismiss a § 2255 petition without conducting an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  Section 2255 "does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 514 (1962).  Section 2255 provides that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing." 28 U.S.C. § 2255.  The Second Circuit has held that:

> It is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories.  After expanding the record, the district court then decides if an evidentiary hearing also is required.  Our precedent disapproves of summary dismissal of petitions where

---

<span>16/</span>    (...continued)
& rec. adopted, 2012 WL 3105012 (S.D.N.Y. July 31, 2012); Lear v. Poole, 711 F. Supp. 2d 288, 298-99 (W.D.N.Y. 2010); Whitted v. United States,  07 Civ. 2174, 2009 WL 4906545 at * 2 (S.D.N.Y. Dec. 18, 2009); Heyward v. Costello, 91 Civ. 1570, 1994 WL 263426 at *3-4 (S.D.N.Y. June 13, 1994); People v. McDonald, 1 N.Y.3d 109, 115, 769 N.Y.S.2d 781, 785 (2003).

factual issues exist[], but it permits a "middle road" of deciding disputed facts on the basis of written submissions.

Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (citations omitted); accord, e.g., United States v. Howard, 443 F. App'x 596, 600 (2d Cir. 2011), cert. denied, 132 S. Ct. 1612 (2012); Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011); Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006) ("As noted in Chang v. United States and Pham v. United States, the district court has discretion to determine if a testimonial hearing will be conducted." (citations omitted)); Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (Petitioner's "claim was not summarily dismissed by the district court.  At the request of the court, the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances concerning [petitioner's § 2255 claim].  We believe that with that submission the record was sufficient to support dismissal of the petition.").

Because the Court in this case has at its disposal the necessary plea and sentencing transcripts, the plea agreement, and Patterson's counsels' sentencing and appellate submissions, an evidentiary hearing is not necessary.

## III.   PATTERSON'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS SHOULD BE DENIED

Patterson asserts that his defense counsel was ineffective and enumerates two failings on the part of his appellate counsel.  (10 Cr. 94, Dkt. No. 183: Pet. at 5, 8, 9 & Ex. at 13.)  The crux of both claims is that the FSA applied retroactively to his case.  (See generally, 10 Cr. 94, Pet. & Ex.)  Patterson separately asserts that his defense counsel "made a mistake" (10 Cr. 94, Pet. at 5) as to his criminal history and category range which lead him to sign the plea agreement under "false pretenses" (10 Cr. 94, Pet. at 8).   To the extent these claims survive Patterson's waiver of his right to collaterally attack his plea, he has failed to demonstrate ineffective assistance of counsel.

### A.   Defense Counsel's Performance As To The Plea Agreement Was Objectively Reasonable

Patterson asserts that he was denied effective assistance of counsel because at the time of his guilty plea, his defense counsel advised him of the "wrong minimum and maximum" sentences.  (10 Cr. 94, Dkt. No. 183: Pet. at 9.)  Patterson further asserts that he would have gone to trial if he had known that a conviction would result in "the same time or lesser than [his] Plea." (Id.)  Patterson's claims presuppose that the new FSA penalty provisions applied at the time of his plea.  (10 Cr. 94, Pet. at 9.)  Patterson's conduct, however, occurred before the FSA's effective date. (See pages 1-2 above.)  As this Court stated in connection with the § 2255 petition of Patterson's co-defendant, Tyrone Oldyn:

> Absent a clear statement that a new law applies retroactively, it is the normal procedure to apply the law in effect at the time the conduct occurred.  See 1 U.S.C. § 109 ("The repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide . . . ."); see also United States v. Smith, 354 F.3d 171, 173 (2d Cir. 2003) (Sotomayor, C.J.) ("First, relevant Supreme Court and Second Circuit case law supports the Government's contention that it is the law at the time of the offense, . . . that governs.  Second, the federal 'saving statute' preserves the original penalties in effect when [defendant] committed the offense . . . ." (emphasis added)); United States v. Gardner, 837 F. Supp. 2d 346, 349-50 (S.D.N.Y. 2011) (Rakoff, D.J.) ("[A] defendant's liability is established by the statute in effect at the time he committed the crime, and not at the time of sentencing, unless Congress expressly provides otherwise in repealing or amending a statute. . . . [T]he Court does not believe its decision in Patterson was in error.  The overwhelming majority of courts to have considered this issue agree that the FSA does not apply to defendants whose offense conduct occurred prior to the FSA's enactment, regardless of when their sentencing occurs." (emphasis added)); United States v. Tejeda, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) ("Likewise, the Court can find nothing in the FSA that alters the default rule that legislative repeal of a criminal penalty does not benefit those who incurred the penalty prior to its repeal, unless the repealing statute expressly provides for such relief.").
>
> In addition to being the default rule, it was the law of this Circuit that the FSA did not apply to defendants who were sentenced after August 3, 2010 for conduct committed before that date.  See United States v. Acoff, 634 F.3d 200, 202 (2d Cir.) (per curiam), cert. denied, 131 S. Ct. 3007 (2011), abrogated on other

grounds by <u>Dorsey</u> v. <u>United States</u>, 132 S. Ct. 2321 (2012); <u>see also</u> district court cases cited immediately above.  Moreover, it is well settled in the Second Circuit that "[t]rial counsel cannot be faulted for failing to predict changes in the governing law." <u>Anthony</u> v. <u>Sheahan</u>, No. 13-CV-6198, 2014 WL 547168 at *10 (W.D.N.Y. Feb. 10, 2014). Oldyn's counsel cannot be faulted for failing to anticipate the Supreme Court's subsequent <u>Dorsey</u> opinion changing the law.  <u>See</u> <u>Mayo</u> v. <u>Henderson</u>, 13 F.3d 528, 533 (2d Cir.) ("Counsel is not required to forecast changes in the governing law."), <u>cert. denied</u>, 513 U.S. 820, 115 S. Ct. 81 (1994).

<u>Oldyn</u> v. <u>United States</u>, 14 Civ. 307, 10 Cr. 94, 2014 WL 3417465 at *10-11 & nn. 17-18 (S.D.N.Y. July 8, 2014) (Peck, M.J.) (fns. citing cases omitted).

Accordingly, because the pre-FSA penalties applied at the time of Patterson's criminal conduct (and therefore there was no change in the law for Patterson to be informed of) and counsel cannot be faulted for failing to foresee the Supreme Court's eventual holding in <u>Dorsey</u> (which was the interpretation Patterson's counsel advanced anyway), Patterson's counsel's performance regarding the applicability of the FSA at the time of the plea hearing was objectively reasonable.

Patterson's additional claims that counsel failed to communicate, and "should have withdrawn the Plea Agreement," seem also to be based upon his supposition that the FSA applied to him at the time of his plea.  (<u>See</u> 10 Cr. 94, Pet. at 9 & Ex. at 5, 13; <u>see also</u> S. at 1-2.)   While Patterson might have believed that if convicted at trial he would be sentenced under the FSA, any strategic decision by counsel not to withdraw his plea on the basis of that belief was objectively reasonable, because Patterson's belief was in direct contradiction with prevailing Second Circuit law at the time.  (<u>See</u> pages 10-11 above.)  Moreover, the record demonstrates that Patterson was given an opportunity to move to withdraw his plea at sentencing, but after consideration decided not to. (<u>See</u> page 5 above.)  Thus, the decision to proceed with sentencing can hardly be attributed to

counsel's deficient performance.  See, e.g.,  Acevedo v. United States, 10 Civ. 5544, 07 Cr. 378, 2012 WL 3764544 at *6 (S.D.N.Y. Aug. 30, 2012).

**B.     Patterson Cannot Demonstrate That Defense Counsel's Performance Resulted In Prejudice**

### 1.     Patterson Was Not Prejudiced By The Plea Agreement

 Patterson asserts that if he knew he "no longer faced a life sentence at trial and if convicted on both charges . . . would face the same time or lesser than [his] Plea," he would have gone to trial.  (10 Cr. 94, Dkt. No. 183: Pet. at 9; Dkt. No. 24: Patterson Reply Br. at 6.)  If convicted on both charges at trial, however, Patterson would not have faced the same or lesser time.  Patterson stipulated in the plea agreement to conspiring to possess and distribute between 500 grams and 1.5 kilograms of cocaine base, an amount which the Government alleges it readily would have proven at trial.  (Dkt. No. 23: Gov't Br. at 20.)  With this stipulated amount, Patterson would have faced a mandatory minimum sentence of ten years under both the pre-FSA guidelines (ten year mandatory minimum for fifty grams or more of cocaine base) and the post-FSA guidelines (ten year mandatory minimum for 280 grams or more of cocaine base).  (See pages 9-10 above.)  Likewise, under the November 1, 2010 emergency amendment to the U.S.S.G., Patterson's conduct straddled two different base offense levels, each carrying a minimum guidelines sentence of more than 120 months.  (See Gov't Br. at 7, 20.)  Moreover, the plea agreement contained substantial concessions by the Government which benefitted Patterson.  (See page 2 above.)  Had Patterson gone to trial, he would have been subject to the firearm charge (see page 2 above), which itself carries a consecutive ten-year mandatory minimum sentence.  18 U.S.C. § 924(c)(1)(A)(iii).  Further, he would not have received a three level reduction in his offense level for his acceptance of responsibility.  (See page 2 above.)  Thus, at trial, Patterson's mandatory minimum sentence for the

conduct stipulated to in his plea agreement would have been twenty years, even if he were sentenced under the FSA. (See page 24 above.)

Moreover, Judge Rakoff explicitly stated that even under the new Guidelines, he would have imposed the same sentence:

> I want to reiterate that even if the new guidelines were in place, I would not sentence Mr. Patterson to less than 120 months, because the nature of the underlying offense and the whole background requires at least a ten-year sentence to fulfill the functions of Section 3553(a).
>
> . . . .
>
> Frankly, I think I made this as clear as I possibly can; [the new guidelines] would not have affected the sentence in any way, shape, or form.

(S. 24, 28.) The evidence thus establishes that any decision to reject the plea, even if under the mistaken belief that the FSA would have applied to a sentence following trial, would not have been "rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485 (2010). To the extent Patterson's argument is that he would have withdrawn his plea and proceeded to trial for the sole purpose of preserving his right to appeal and petition for relief under the FSA (Pet. Ex. at 16-17), his petition contains no evidence or reasoning that would allow the Court to find that such decision would have been rational under the circumstances, given that he faced a mandatory minimum sentence of twenty years.

Accordingly, Patterson cannot demonstrate prejudice. See, e.g., Nunez-Polanco v. United States, 20 F. Supp. 3d 473, 481 (S.D.N.Y. 2014) ("Petitioner's independent knowledge of the risks of trial therefore cuts against a finding of prejudice."); Morton v. Perez, 13 Civ. 3985, 2014 WL 407411 at *9 (S.D.N.Y. Feb. 4, 2014) ("[I]f [defendant] had gone to trial, [defendant] could have faced 25 years imprisonment on each of the robbery charges, seven years on the weapons possession charge, and four years on the bail jumping charge. Also, all of these sentences could

have been ordered to run consecutively.  Given the choice [defendant] faced, and the absence of any evidence in the record suggesting that he would have been acquitted, there is no basis on which to conclude that 'a decision to reject the plea bargain would have been rational under the circumstances.'" (quoting Padilla v. Kentucky, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485 (2010))), report & rec. adopted, 2014 WL 948186 (S.D.N.Y. Mar. 11, 2014); Francis v. United States, 12 Civ. 1362, 2013 WL 673868 at *4 (S.D.N.Y. Feb. 25, 2013) (In determining whether a petitioner has made the requisite showing, "'[c]onclusory allegations that [a petitioner] would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under Strickland.'"), appeal dismissed, 561 F. App'x 23 (2d Cir. 2014).

### 2.   Counsel's Alleged Error Did Not Prejudice Patterson

Patterson asserts that defense counsel was ineffective because she "made a mistake" in calculating his CHC.  (10 Cr. 94, Dkt. No. 183: Pet. at 5.)  While Patterson is correct that counsel stated on the record that there was a "misunder[standing] that the instant offense was committed while [Patterson was] on probation" (S. 7), his claim is without merit because he cannot show that he was prejudiced.

As an initial matter, the record clearly demonstrates that counsel made determined efforts to have Patterson's CHC reduced.  Prior to sentencing, counsel submitted a memorandum extensively detailing her position that the CHC assigned by the presentence report and stipulated to in the plea agreement overstated Patterson's criminal history, and inappropriately accounted for criminal conduct relevant to the underlying charge.  (Dkt. No. 23: Gov't Br. Ex. F: Patterson Sentencing Br. at 7-9.)  At sentencing, counsel again challenged Patterson's CHC and argued that it should be reduced from II to I.  (S. 6-9.)  In addition to challenging the Guidelines range, counsel also argued for a downward departure from the Guidelines.  (S. 12-17.)

Further, any alleged error on counsel's part did not impact Patterson's actual sentence. The record establishes that Judge Rakoff expressly decided to impose a non-Guidelines sentence. At sentencing, Judge Rakoff stated, "My sentence is not going to be affected, one whit, by whether [Patterson's criminal history category] is a I or II or a III for that matter." (S. 11.) Judge Rakoff further stated, "[I]f it was I or III, it would make no difference in my sentence." (S. 12.) Finally, Judge Rakoff explained that regardless of the Guidelines, "the nature of the underlying offense and the whole background requires at least a ten-year sentence to fulfill the functions of Section 3553(a)." (See pages 6, 25 above.) Thus, Patterson can not make a showing that but for counsel's error "the ultimate sentence would have been lower." Porter v. United States, No. 09-CV-1146, 2009 WL 2601297 at *5 (E.D.N.Y. Aug. 20, 2009); see also, e.g., Johnson v. United States, 313 F.3d 815, 818 (2d Cir. 2002) ("The question is whether, but for [counsel's] lapse, is there a reasonable probability the sentence would have been the same."); Alkhabbaz v. United States, 12 Civ. 4801, 2014 WL 7190874 at *7 n.4 (S.D.N.Y. Dec. 5, 2014) ("Petitioner must show that it was reasonably probable that the Court would have imposed a more lenient sentence if there had been a lower stipulated range. . . . Petitioner has made no such showing here."), appeal docketed, No. 15-85 (2d Cir. Jan. 15, 2015); Colon v. United States, 07 Civ. 2172, 2010 WL 1644260 at *7 (S.D.N.Y. Apr. 21, 2010).[17/] Accordingly, counsel's alleged error did not prejudice Patterson under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).

---

[17/]   Patterson contradictorily claims that had he known of counsel's error he would not have signed the plea agreement (10 Cr. 94, Pet. at 8), and that when he reviewed the plea with counsel they discussed the error, and counsel assured him it would be fixed at sentencing (Id. at 16).

**C.**     **Patterson's Claim As To His Appellate Counsel Is Without Merit**

Patterson asserts that his appellate counsel did not argue his "proper guideline range." (10 Cr. 94, Dkt. No. 183: Pet. Ex. at 13.)  As an initial matter, this claim is factually inaccurate. Patterson's appellate counsel submitted a brief arguing that the FSA guidelines should apply to all defendants sentenced after its effective date.  (See generally Dkt. No. 23: Gov't Br. Ex. H: Patterson Appeal Br.)  Counsel further argued that Patterson's sentence in particular should be vacated and remanded for "resentencing using the lesser five-year mandatory minimum sentence that applies to his offense of conviction under present law."  (Patterson Appeal Br. at 3.)

To the extent Patterson's claim is that counsel should have supplemented the appellate brief after the Supreme Court decided Dorsey v. United States, 132 S. Ct. 2321 (2012), Patterson cannot show that he was prejudiced by any such failing, because the Second Circuit considered Dorsey in dismissing Patterson's appeal.  (See page 7 above.)  Thus, Patterson cannot demonstrate a "reasonable probability" that, but for appellate counsel's deficiency, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 688, 694, 104 S. Ct. 2052, 2068 (1984); see also, e.g., Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) ("Strickland's two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right."); Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000) (The "two-prong [Strickland] test applies to the evaluation of appellate counsel as well as trial counsel. It is because of the second prong of the Strickland test that [petitioner] must show here that the outcome of his appeal would have been different had counsel raised the issue. . . ." (citations omitted)), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001); Moreno-Godoy v. United States, 13 Civ. 2383, 07 Cr. 354, 2014 WL 1088300 at *30 (S.D.N.Y. Mar. 20, 2014).  As Patterson cannot show prejudice, "this Court need not consider whether . . . counsel's performance fell below an objective standard of reasonableness."

Shah v. United States, 12 Civ. 6366, 10 Cr. 1169, 2013 WL 1641167 at *4 (S.D.N.Y. Apr. 16, 2013); see, e.g., Parker v. Ercole, 666 F.3d 830, 834 (2d Cir. 2012); Millington v. Lee, 11 Civ. 499, 2015 WL 1402133 at *13 (S.D.N.Y. Mar. 26, 2015); see also cases cited at page 18 above.

To the extent Patterson's claim is that counsel should have argued that Judge Rakoff "reserved" Patterson's right to appeal as to sentencing (Dkt. No. 24: Patterson Reply Br. at 3), that claim is unavailing.  The Second Circuit found that Patterson's appeal waiver was valid, barring his right to appeal.  (See page 7 above.)  Because an appeal waiver does "not lose its effectiveness when the district court in a subsequent proceeding ma[kes] statements arguably inconsistent with that waiver," United States v. Brickhouse, 517 F. App'x 22, 23 (2d Cir. 2013), any argument by counsel to the contrary would not have impacted the outcome of the proceeding.

Accordingly, Patterson's claim as to his appellate counsel should be denied.

## IV.    PATTERSON'S REMAINING CLAIM IS BARRED BY HIS WAIVER

Patterson's final claim is that "the District Court erred by not applying the FSA proper Guideline Range and Category as well as the proper mandatory minimum and maximum," in violation of his rights under the Eighth Amendment and the Fifth Amendment Due Process Clause (10 Cr. 94, Dkt. No. 183: Pet. at 6 & Ex. at 7-13).  Because Patterson's counsel was not ineffective during the plea proceedings (see Part III above), Pattersons's appeal waiver bars his sentencing claim if the appeal waiver otherwise was knowing and voluntary.  United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004) ("Where the record clearly demonstrates that the defendant's waiver of h[is] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable."); see also cases cited at pages 12-13 above.  A waiver is "knowing" if the "defendant fully understood the potential consequences of his waiver." United States v. Monzon, 359 F.3d at

116 (internal quotations omitted); see also, e.g., United States v. Coston, 737 F.3d 235, 237 (2d Cir.

2013) (per curiam).  To determine whether a defendant understood the consequences of a waiver,

> the district court [is] entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below [the agreed upon range], and had been made no promises except those contained in the plea agreement.

United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam).

Notwithstanding Patterson's assertion to the contrary in his motion for counsel (Dkt.

No. 1), the record here clearly demonstrates that his appeal waiver was knowing and voluntary.  At

the plea colloquy before Judge Rakoff, Patterson acknowledged that he was satisfied with his

representation by counsel, that he understood and discussed the plea agreement with counsel, and

that he was aware he was giving up certain rights by pleading guilty.  (See page 3 above.)  Critically,

Judge Rakoff reviewed the portion of the plea agreement containing the appeal waiver provision and

specifically inquired whether Patterson understood that he was agreeing to waive his right to

challenge a sentence at or below 188 months, and Patterson replied that he did.  (See page 3 above.)

Accordingly, Patterson's appeal waiver was knowing and voluntary.  See, e.g., United States v.

Cotto, 552 F. App'x 93, 94 (2d Cir. 2014) ("The parties do not dispute that [petitioner] made a

knowing, voluntary, and competent waiver of his appellate rights. Nor could they: The District Court

clearly addressed the waiver at the time of [petitioner's] plea, and [petitioner] confirmed that he

understood the rights he was giving up and he was doing so voluntarily."); Garcia-Santos v. United

States, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam) (valid waiver where defendant "signed the plea

agreement," told the judge "that he had read and understood the plea agreement," and that defendant

"did not claim, in his § 2255 motion, that he had not understood the waiver contained in his plea

agreement"); Oldyn v. United States, 14 Civ. 307, 10 Cr. 94, 2014 WL 347465 at *13 (S.D.N.Y. July

8, 2014) (Peck, M.J.) (finding Patterson's co-defendant's appeal waiver to be knowing and voluntary); <u>Khan</u> v. <u>United States</u>, 11 Civ. 7613, 07 Cr. 711, 2014 WL 2111677 at *7 (S.D.N.Y. Apr. 28, 2014) ("In determining whether a plea was knowing and voluntary, 'open court declarations "carry a strong presumption of verity."'" (quoting <u>Lynch</u> v. <u>United States</u>, 309 F. App'x 487, 489 (2d Cir. 2009))); <u>Abramo</u> v. <u>United States</u>, 12 Civ. 1803, 2014 WL 1171735 at *13 (S.D.N.Y. Mar. 21, 2014) (Rakoff, D.J. & Pitman, M.J.) ("The record clearly demonstrates that petitioner stated he understood the consequences of the plea agreement's appeal/2255 waiver provision and that he had voluntarily entered into the agreement.  During petitioner's plea allocution, petitioner acknowledged, under oath, that he had discussed the terms of the plea agreement with [counsel], and pursuant to those discussions, that he understood the terms.  Petitioner also expressed his satisfaction with counsel's representation of him.  Petitioner affirmed that he had not been threatened, induced or coerced into signing the plea agreement.  Most importantly, while conducting petitioner's plea allocution, Judge Rakoff clearly informed petitioner of the consequences of the appeal/2255 waiver provision in the plea agreement . . . .  On this basis, Judge Rakoff found that petitioner's plea was entered 'knowingly and voluntarily.'" (record citations omitted)); <u>Jones</u> v. <u>United States</u>, 12 Civ. 646, 10 Cr. 197, 2014 WL 657508 at *3-4 (S.D.N.Y. Feb. 19, 2014) ("During his plea allocution, the Petitioner expressly acknowledged that he understood the effect of the Plea Agreement.  The Petitioner also informed the Court that he signed the Plea Agreement freely and voluntarily.  The Petitioner was sentenced . . . within the Stipulated Guidelines Range to which the Petitioner agreed.  There is no reason why petitioner should not be held to his agreement not to appeal or collaterally attack his sentence.").

   While Patterson places great emphasis on Judge Rakoff's suggestion that the issue of the FSA's retroactivity might be appealable (Pet. Ex. at 4, 5, 17, 18; <u>see</u> also page 7 above), he

has already appealed that issue, and in any event such advice is not sufficient to upset a valid waiver of appeal, or, as Patterson argues, "reserve" the right to appeal (Dkt. No. 24: Patterson Reply Br. at 3, 4, 5).  See, e.g., United States v. Brickhouse, 517 F. App'x 22, 23 (2d Cir. 2013); United States v. Watson, 10 Cr. 910, 2013 WL 4082894 at *1 (S.D.N.Y. Aug. 2, 2013), reconsideration denied, 10 Cr. 910, 2013 WL 6504393 (S.D.N.Y. Dec. 11, 2013).

Accordingly, because Patterson's appeal waiver was entered into knowingly and voluntarily, and he raises no other basis on which to invalidate it, see, e.g., United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000), Patterson's waiver is binding and his sentencing claim (10 Cr. 94, Pet. at 6) is barred.  See, e.g., Samas v. United States, No. 12-cv-00151, 2014 WL 1653219 at *7 (D. Conn. Apr. 23, 2014); Abramo v. United States, 2014 WL 1171735 at *10.[18]

## CONCLUSION

For the reasons set forth above, Patterson's § 2255 petition for a writ of habeas corpus (10 Cr. 94, Dkt. No. 183: Pet.) should be DENIED in its entirety.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

---

[18]   Accord, e.g., Morales v. United States, 08 Civ. 3901, 05 Cr. 120, 2009 WL 3353064 at *5 (S.D.N.Y. Oct. 20, 2009) (Peck, M.J.); Antonucci v. United States, 08 Civ. 529, 04 Cr. 828, 2009 WL 185996 at *4 (S.D.N.Y. Jan. 26, 2009) ("With regard to the waiver provision's validity, the record unambiguously reveals that [defendant] fully understood its potential consequences and voluntarily gave his assent.  If such a claim were permitted to circumvent the plain language of the waiver agreement, the waiver of appeal provision would be rendered meaningless, as would the Plea Agreement itself.  Because the waiver was both knowing and voluntary, it effectively bars the claim [defendant] is attempting to advance." (fn. omitted)).

33

objections.  See also Fed. R. Civ. P. 6.[19/]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Rakoff (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:        New York, New York
              May 5, 2015

                                    Respectfully submitted,


                                    _____
                                    Andrew J. Peck
                                    United States Magistrate Judge


Copies to:    Maurice Patterson (Mail)
              AUSA Benet J. Kearney (ECF)
              Judge Jed S. Rakoff

---

[19/]    If Patterson requires copies of any of the cases reported only in Westlaw, he should request copies from respondent's counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.